## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
## WITCHITA DIVISION

|  |  |  |
|---|---|---|
| STEVEN DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No.: 6:18-cv-01270-JWB** |
| | ) | |
| CHW GROUP, INC. d/b/a CHOICE HOME | ) | |
| WARRANTY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, STEVEN DEAN ("Plaintiff"), by and through his attorneys, for his First Amended Complaint, alleges the following against Defendant, CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY ("Defendant"):

### INTRODUCTION

1. Plaintiff's First Amended Complaint is based on the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA").

2. The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.  As the Seventh Circuit Court of Appeals wrote: "No one can deny the legitimacy of the state's goal: preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious." *Patriotic Veterans v. Zoeller,* 845 F.3d 303, 305-306 (7th Cir. 2017).

## JURISDICTION AND VENUE

5.  This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

6.  This court has federal question jurisdiction because this case arises out of violations of federal law.  47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7.  Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

## PARTIES

8.  Plaintiff is a natural person residing in the City of Hutchinson, Reno County, State of Kansas.

9.  Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant is a New Jersey business corporation based in the Township of Edison, Middlesex County, State of New Jersey.

12. As a business corporation, Defendant is a legal/juristic person—that is to say, it has not a physical body to take physical actions.

13. A corporation can act only through its agents and employees. *Protectus Alpha Nav. Co., Ltd. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985).

14. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

15. Within four (4) years of Plaintiff filing this Complaint, in September 2018, Defendant began placing calls to Plaintiff's residential landline telephone at 620-662-8858, which included or introduced an advertisement or constituted telemarketing.

16. Plaintiff's residential landline telephone service provider, at all times relevant hereto, was Cox Communications, Inc.

17. Within four (4) years of Plaintiff filing this Complaint, in September 2018, Defendant began placing calls to Plaintiff's cellular telephone at 620-727-5161, which included or introduced an advertisement or constituted telemarketing.

18. Plaintiff's cellular telephone service provider, at all times relevant hereto, was Verizon Wireless.

19. Within four (4) years of Plaintiff filing this Complaint, in September 2018, Defendant called Plaintiff's cellular and landline telephones from several telephone numbers.

20. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-379-5309.

21. 732-379-5309 is one of Defendant's telephone numbers.

    a. Defendant called Plaintiff from 732-379-5309 on September 4, 2018 at 3:43 p.m.

    b. Defendant called Plaintiff from 732-379-5309 on September 6, 2018 at 3:37 p.m.

    c. Defendant called Plaintiff from 732-379-5309 on September 7, 2018 at 9:04 a.m.

      d.  Defendant called Plaintiff from 732-379-5309 on September 7, 2018 at 12:05 p.m.

      e.  Defendant called Plaintiff from 732-379-5309 on September 7, 2018 at 3:05 p.m.

22. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-339-3869.

23. 732-339-3869 is one of Defendant's telephone numbers.

      a.  Defendant called Plaintiff from 732-339-3869 on September 6, 2018 at 9:12 a.m.

      b.  Defendant called Plaintiff from 732-339-3869 on September 6, 2018 at 12:19 p.m.

      c.  Defendant called Plaintiff from 732-339-3869 on September 6, 2018 at 3:28 p.m.

      d.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 9:44 a.m.

      e.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 9:44 a.m.

      f.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 12:34 p.m.

      g.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 12:34 p.m.

      h.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 12:34 p.m.

      i.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 12:48 p.m.

      j.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 12:48

p.m.

k.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 9:31 a.m.

l.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 9:31 a.m.

m.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 4:33 p.m.

n.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 4:33 p.m.

o.  Defendant called Plaintiff from 732-339-3869 on September 20, 2018 at 4:33 p.m.

24. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-374-3396.

25. 732-374-3396 is one of Defendant's telephone numbers.

a.  Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 12:39 p.m.

b.  Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 4:33 p.m.

c.  Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 9:08 a.m.

d.  Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 9:08 a.m.

e.  Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 12:19

p.m.

 f. Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 3:46 p.m.

 g. Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 9:23 a.m.

 h. Defendant called Plaintiff from 732-374-3396 on September 12, 2018 at 9:23 a.m.

 i. Defendant called Plaintiff from 732-374-3396 on September 26, 2018 at 9:46 a.m.

 j. Defendant called Plaintiff from 732-374-3396 on September 26, 2018 at 12:49 p.m.

26. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-374-3399.

27. 732-374-3399 is one of Defendant's telephone numbers.

 a. Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 9:14 a.m.

 b. Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 9:22 a.m.

 c. Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 12:31 p.m.

 d. Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 12:23 p.m.

 e. Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 3:58

p.m.

    f.  Defendant called Plaintiff from 732-374-3399 on September 13, 2018 at 3:34 p.m.

28. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-374-3401.

29. 732-374-3401 is one of Defendant's telephone numbers.

    a.  Defendant called Plaintiff from 732-374-3401 on September 14, 2018 at 1:46 p.m.

    b.  Defendant called Plaintiff from 732-374-3401 on September 14, 2018 at 9:19 a.m.

    c.  Defendant called Plaintiff from 732-374-3401 on September 14, 2018 at 9:29 a.m.

    d.  Defendant called Plaintiff from 732-374-3401 on September 14, 2018 at 2:04 p.m.

30. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-394-6700.

31. 732-394-6700 is one of Defendant's telephone numbers.

    a.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 12:38 p.m.

    b.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 4:18 p.m.

    c.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 8:53 a.m.

d.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 12:16 p.m.

e.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 9:20 a.m.

f.  Defendant called Plaintiff from 732-394-6700 on September 17, 2018 at 3:47 p.m.

32. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-339-3215.

33. 732-339-3215 is one of Defendant's telephone numbers.

a.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 12:57 p.m.

b.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 9:55 a.m.

c.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 9:30 a.m.

d.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 4:18 p.m.

e.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 4:54 p.m.

f.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 4:55 p.m.

g.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 12:36 p.m.

    h.  Defendant called Plaintiff from 732-339-3215 on September 18, 2018 at 12:36 p.m.

34. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-339-3488.

35. 732-339-3488 is one of Defendant's telephone numbers.

    a.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 4:02 p.m.

    b.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 4:02 p.m.

    c.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 4:02 p.m.

    d.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 12:22 p.m.

    e.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 12:32 p.m.

    f.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 12:32 p.m.

    g.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 9:16 a.m.

    h.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 9:16 a.m.

    i.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 9:26 a.m.

     j.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 9:26 a.m.

     k.  Defendant called Plaintiff from 732-339-3488 on September 19, 2018 at 4:36 p.m.

36. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-374-3256.

37. 732-374-3256 is one of Defendant's telephone numbers.

     a.  Defendant called Plaintiff from 732-374-3256 on September 7, 2018 at 9:28 a.m.

     b.  Defendant called Plaintiff from 732-374-3256 on September 7, 2018 at 1:04 p.m.

     c.  Defendant called Plaintiff from 732-374-3256 on September 21, 2018 at 2:16 p.m.

     d.  Defendant called Plaintiff from 732-374-3256 on September 21, 2018 at 2:16 p.m.

     e.  Defendant called Plaintiff from 732-374-3256 on September 21, 2018 at 9:28 a.m.

     f.  Defendant called Plaintiff from 732-374-3256 on September 21, 2018 at 9:29 a.m.

38. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-898-3609.

39. 732-898-3609 is one of Defendant's telephone numbers.

     a.  Defendant called Plaintiff from 732-898-3609 on September 10, 2018 at 3:59 p.m.

     b.  Defendant called Plaintiff from 732-898-3609 on September 10, 2018 at 9:13

a.m.

c.  Defendant called Plaintiff from 732-898-3609 on September 10, 2018 at 12:22 p.m.

d.  Defendant called Plaintiff from 732-898-3609 on September 24, 2018 at 4:35 p.m.

e.  Defendant called Plaintiff from 732-898-3609 on September 24, 2018 at 4:35 p.m.

f.  Defendant called Plaintiff from 732-898-3609 on September 24, 2018 at 9:24 a.m.

g.  Defendant called Plaintiff from 732-898-3609 on September 24, 2018 at 12:37 p.m.

h.  Defendant called Plaintiff from 732-898-3609 on September 24, 2018 at 12:37 p.m.

40. Defendant called Plaintiff on Plaintiff's cellular and/or residential landline telephone from 732-374-3353.

41. 732-374-3353 is one of Defendant's telephone numbers.

a.  Defendant called Plaintiff from 732-374-3353 on September 11, 2018 at 12:41 p.m.

b.  Defendant called Plaintiff from 732-374-3353 on September 11, 2018 at 4:27 p.m.

c.  Defendant called Plaintiff from 732-374-3353 on September 11, 2018 at 9:39 a.m.

d.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 4:03

p.m.

    e.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 12:32 p.m.

    f.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 12:32 p.m.

    g.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 9:29 a.m.

    h.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 9:29 a.m.

    i.  Defendant called Plaintiff from 732-374-3353 on September 25, 2018 at 9:29 a.m.

42. Defendant has admitted calling Plaintiff in its Fed. R. Civ. P. 26(a)(1)(A) initial disclosures by acknowledging that Defendant has "[d]ocuments concerning Plaintiff's interactions with CHW via telephone and internet."   (A true-and-correct copy of Defendant's Fed. R. Civ. P. 26(a)(1)(A) Initial Disclosures are attached hereto as Exhibit A).

43. Defendant has admitted calling Plaintiff in its Fed. R. Civ. P. 26(a)(1)(A) initial disclosures by acknowledging that Defendant has "[d]ocuments concerning CHW's means of calling of Plaintiff."  (Exhibit A).

44. On or about September 4, 2018, Plaintiff answered a call from Defendant at 732-379-5309.

45. During the above-referenced call:

    a.  Plaintiff answered the call by saying hello;

    b.  Plaintiff was not immediately connected with a live person on the other end;

    c.   After a few seconds of silence, Defendant's representative came on the line and introduced himself as calling from Choice Home Warranty about the sale of a home-warranty product; and

    d.   Plaintiff told Defendant's representative that Plaintiff was shopping around and had to think about it before making a decision on purchasing a home warranty.

46. On September 12, 2018, at approximately 9:17 a.m., Plaintiff placed an inbound call to Defendant at 732-374-3396.

47. During the above-referenced call:

    a.   Defendant's representative, Frank, answered Plaintiff's call and confirmed that Plaintiff had contacted Choice Home Warranty;

    b.   Plaintiff requested that Defendant take his name and numbers off of Defendant's list and stop calling Plaintiff; and

    c.   Frank acknowledged Plaintiff's request and informed Plaintiff that Defendant would not place any further calls to Defendant.

48. Despite Plaintiff's request that Defendant stop calling Plaintiff, and Defendant's representative, Frank's assurances, Defendant continued to call Plaintiff's telephones unabated.

49. Plaintiff answered a few more calls from Defendant thereafter.

50. With regard to the above-referenced calls:

    a.   Plaintiff was sometimes greeted by several seconds of silence;

    b.   Plaintiff was sometimes greeted by clicking sounds;

    c.   Plaintiff was sometimes greeted by a prerecorded message instructing Plaintiff to hold for the next representative (or similar words to that effect); and

      d.  Plaintiff was sometimes, eventually (after experiencing one or more of the foregoing greetings), connected to a live person that confirmed that the call had come from Choice Home Warranty.

51. A TCPA "[c]omplaint need not allege the exact dates and times of the calls in order to notify [defendant] of its purported violations of the TCPA." *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729, 733 (D.S.C. 2015).

52. "[N]otice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every [call]." *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010).

53. None of the calls Defendant made to Plaintiff were for an emergency purpose.

54. All of the calls Defendants made to Plaintiff's telephones resulted in Plaintiff incurring a charge for incoming calls.

55. During at least one conversation, Defendant learned that Plaintiff wanted Defendant to stop calling Plaintiff's telephones.

56. Plaintiff has never given to Defendant prior express written consent to contact Plaintiff as described herein.

57. Even if Plaintiff provided Defendant with his telephone numbers, Defendant failed to provide Plaintiff with clear and conspicuous disclosure that Defendant would contact Plaintiff with an automatic telephone dialing system ("ATDS") and/or pre-recorded or artificial voice.

58. Even if at one point Defendant had prior express written consent to call Plaintiff's telephones using an ATDS and/or pre-recorded or artificial voice, Plaintiff revoked this consent as described above.

59. Defendant continued to call Plaintiff's telephones after Defendant knew Plaintiff wanted the calls to stop.

60. Within four (4) years of Plaintiff filing this Complaint, Defendant used an ATDS and/or pre-recorded or artificial voice to call Plaintiff's telephones.

61. As detailed above, when Plaintiff answered Defendant's calls, he was sometimes greeted with a message utilizing a pre-recorded or artificial voice.

62. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to store telephone numbers.

63. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers automatically.

64. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call stored telephone numbers without human intervention.

65. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers in sequential order.

66. The telephone dialer system Defendant used to call Plaintiff's telephones has the capacity to call telephone numbers randomly.

67. Defendant placed the above-detailed calls to Plaintiff using a telephone dialing system manufactured by Avaya, Inc.

68. Telephone dialing systems manufactured by Avaya, Inc. have the capacity to make predictive calls.

69. Defendant's telephone dialer system has the capacity to make predictive calls.

70. Even if Defendant's telephone dialer system does not use a random or sequential number generator, its telephone dialer system is still an ATDS as defined by the TCPA. *Heard v.*

*Nationstar Mortg. LLC*, No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *6 (N.D. Ala. Aug. 23, 2018) (TCPA case involving phone system manufactured by Avaya, Inc.).

71. The telephone dialer system Defendant used to call Plaintiff's telephones selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

72. The telephone dialer system Defendant used to call Plaintiff's telephones simultaneously calls multiple recipients.

73. The dead air that the Plaintiff sometimes experienced, as described above, on the calls that he received is indicative of the use of an ATDS. This "dead air" is commonplace with autodialing and/or predictive dialing equipment. It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated. Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiff. The dead air is essentially the autodialer holding the calls it placed to Plaintiff until the next available human agent is ready to accept them. Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiff's telephones would have been on the other end of the call the entire time and Plaintiff would have been immediately greeted by said person.

74. In placing the calls that form the basis of this Complaint, Defendant, or its affiliated entities, utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated

fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).[1]

75. Several courts have recognized that a plaintiff plausibly alleges a call originated from an ATDS when it has characteristics of an automated call. *See e.g., Asher v. Quicken Loans, Inc.*, No. 2:17-cv-1203, 2019 WL 131854, at *3 (D. Utah Jan. 8, 2019) (finding calls "bore indicia of an automated dialer" when the plaintiff alleged that he experienced "a delay before [he] is able to speak to anyone"); *Sessions v. Barclays Bank Del.*, 317 F. Supp. 3d 1208, 1213 (N.D. Ga. 2018) (finding a plaintiff plausibly alleged a call originated from an ATDS when she stated she experienced five or more seconds of "dead air" before a person would respond on the phone); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06324, 2011 WL 881550, at *3 (N.D. Ill Mar. 11, 2011) (denying a motion to dismiss when the plaintiff alleged "there was a prerecorded voice that answered and told her to hold for assistance" after she answered the phone).[2]

76. "[C]ourts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that courts can rely on details about the call to infer the use of an ATDS." *Stewart v. T-Mobile USA, Inc.*, 124 F. Supp. 3d 729,

---

[1] It is incontrovertible that Defendant uses an ATDS as it includes a TCPA disclaimer right on its website. https://www.choicehomewarranty.com/get-a-quote/start.php ("By entering my information and submitting for a free quote, I am providing express consent to be contacted via email, phone and text, including my wireless phone number, regarding product and servicing information using automated technology, even if it is registered on a federal, state, or corporate do not call list. I am not required to provide this consent in order to obtain goods or services from Choice Home Warranty. If my area is not covered, I may be referred to alternate trusted provider") (last accessed April 17, 2019).

[2] Cases collected in *Rallo v. Palmer Admin. Servs., Inc.*, No. 18-CV-01510-RM-MEH, 2019 WL 1468411, at *3 (D. Colo. Apr. 3, 2019).

734 (D.S.C. 2015) (internal quotations and citations omitted).

77. "[A] TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, the generic content the message he received, or anything else about the circumstances of a call or message contributing to his belief it was prerecorded or delivered via an ATDS. *Sojka v. DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1002 (N.D. Ill. 2014) (quoting *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).

78. "The issue is whether the allegations of the complaint, taken as a whole and including the nature of the communication, give rise to a plausible belief that the message was sent using an ATDS." *Robbins v. Coca-Cola-Co.*, No. 13-CV-132-IEG NLS, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (internal citation omitted).

79. "While additional factual details about the machines might be helpful, further facts are not required to move beyond the pleading stage.  It is possible that further litigation will determine that no ATDS was used, but the complaint has pleaded enough facts "to raise a right to relief above the speculative level." *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

80. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiff's telephones without prior express written consent, Defendant caused Plaintiff harm and/or injury such that Article III standing is satisfied in at least the following, if not more, ways:

     a.  Invading Plaintiff's privacy;
     b.  Electronically intruding upon Plaintiff's seclusion;
     c.  Intrusion into Plaintiff's use and enjoyment of his telephones;

    d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiff has as to complete ownership and use of his cellular and landline telephones; and

    e. Causing Plaintiff to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

81. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii); and

    b. Placing non-emergency telephone calls to Plaintiff's residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party in violation of 47 U.S.C. § 227 (b)(1)(B).

WHEREFORE, Plaintiff, STEVEN DEAN, respectfully requests judgment be entered against Defendant, CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY for the following:

82. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

83. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

84. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

85. Any other relief that this Honorable Court deems appropriate.

Respectfully submitted,

AGRUSS LAW FIRM, LLC

MOLNER LAW GROUP, LLC

By: /s/ James J. Parr

James J. Parr, ARDC No. 6317921
4809 N. Ravenswood Avenue,
Suite 419
Chicago, IL 60640
312-224-4695 – office
312-253-4451 – facsimile
james@agrusslawfirm.com
Attorney for Plaintiff
**Admitted *Pro Hac Vice***

By: /s/ Mark D. Molner

Mark D. Molner, SBN 24493
300 E. 39th Street, Suite 1G
Kansas City, MO 64111
816-281-8549 – office
816-817-1473 – facsimile
mark@molnerlaw.com
Attorney for Plaintiff

# <u>EXHIBIT A</u>

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
WICHITA DIVISION

| | |
|---|---|
| **STEVEN DEAN,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CHW GROUP, INC., d/b/a CHOICE** | ) |
| **HOME WARRANTY,,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**Case No.: 6:18-cv-1270**

## DEFENDANT'S FED. R. CIV. P. 26(a)(1)(A) INITIAL DISCLOSURES

Pursuant to Fed. R. Civ. P. 26(a)(1)(A), Defendant CHW Group, Inc. d/b/a Choice Home Warranty ("CHW" or "Defendant"), by and through its undersigned counsel, hereby propounds the following initial disclosures ("Disclosures"):

### RESERVATION OF RIGHTS

CHW has not yet completed its investigation and analysis of the facts relating to the above-captioned litigation. As such, CHW's ongoing discovery, analysis and investigation may disclosure the existence of additional facts, add meaning to known facts, support entirely new legal or factual contentions, and may lead to additions or modifications to these Disclosures. CHW therefore reserves the right: (i) to amend, revise, correct, add to, supplement, modify or clarify the Disclosures set forth below or the information divulged therein or thereby; and (ii) to make use of or introduce in any hearing or at trial information, data, documents, or testimony not known to exist at the time of these Disclosures, including but not limited to information obtained in the court of discovery as may be required under the Federal Rules of Civil procedures.

With respect to witnesses or individuals who likely may have discoverable information that

are identified in these Disclosures, CHW reserves its right to: (i) supplement, revise, correct, or amend its list of witnesses as discovery proceeds in this matter; (ii) call as witnesses at any hearing or trial of this action any person or representative of any entity who is or has been identified by any other party to this action as a person having knowledge of the facts and circumstances relating to this action; (iii) designate and call as witnesses any experts who are hereinafter designated and have formed opinions with regard to the facts and matters at issue in this litigation; and (iv) designate and call as witnesses such persons or representatives of entities during the course of discovery, at any hearing, or before trial as having knowledge of relevant facts, and to call rebuttal and impeachment witnesses as may be necessary.

## DISCLOSURES

### I.  List of Persons with Knowledge

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), CHW hereby discloses "the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that [CHW] may use to support its claims or defenses" in this matter:

*1. Plaintiff Steven Dean ("Plaintiff")*

Plaintiff, and possibly Plaintiff's spouse or domestic partner or other family members or members of Plaintiff's household, is/are likely to have knowledge regarding the facts and circumstances of this litigation on all subjects relating to Plaintiff's allegations as to CHW, as well as CHW's defenses thereto.  This may include, but not necessarily be limited to, information regarding Plaintiff's and others' interactions with CHW, Plaintiff's allegations against CHW, and Plaintiff's provision of his cell phone number and/or consent to be contacted to CHW and other third parties.  Plaintiff may be contacted through counsel of record in this matter.

2

2. *Brian Tretter*

Mr. Tretter is a CHW employee familiar with CHW's business, policies, and procedures and is knowledgeable regarding the facts and circumstances relating to Plaintiff's allegations against CHW as well as CHW's defenses thereto.  The testimony that Mr. Tretter may provide may include, but not necessarily be limited to, information regarding CHW's business practices, corporate compliance issues, and  CHW's interactions with Plaintiff, if any.  Mr. Tretter can be contacted through Defendant's counsel of record in this matter.

In addition, individuals likely to have discoverable information that Defendant may use to support its defenses include but will not be limited to the following:

- Other current and former employees of Defendant, whose identities are not currently known at this time, who may possibly have knowledge of facts relating to allegations in Plaintiff's Complaint and to the extent that they have information relevant to claims or defenses in this action, which will be determined as discovery continues;

- All witnesses identified by Plaintiff in this matter at Plaintiff's deposition, on Plaintiff's witness list, in Plaintiff's responses to any interrogatories and requests for production of documents, and in Plaintiff's initial disclosures under Fed. R. Civ. P. 26(a);

- All witnesses identified in any other deposition taken in this matter;

- Plaintiff's home phone, cellular phone and internet service provider(s), and anyone else who may have or has access to Plaintiff's phones or computers;

- All witnesses necessary for foundation purposes in the entry of exhibits;

- All experts needed to respond to experts named by Plaintiff; and

- Any necessary rebuttal witnesses.

By disclosing the foregoing individuals, CHW does not waive any objections as to their testimony and reserves the right not to rely on their testimony or call them at trial.

## II.     List of Documents

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii), CHW hereby provides "a description by category and location […] of all documents, electronically stored information, and tangible things

that [CHW] has in its possession, custody, or control and may use to support its claims or defenses"
in this matter:

1. Documents concerning Plaintiff's interactions with CHW via telephone and internet;

2. Documents concerning CHW's means of calling of Plaintiff;

3. Copies of CHW's relevant policies and procedures;

4. Any other relevant documentation related to Plaintiff's communications and interactions with Defendant;

5. Plaintiff's home and cellular phones, laptop and PC's, and other computing devices;

6. Documents marked as exhibits during depositions taken in this matter;

7. Documents produced in discovery by any party to this action or by any third parties;

8. Any documents identified by Plaintiff;

9. Any documents needed for rebuttal and impeachment; and

10. Any documents and other tangible materials identified by either party as potential trial exhibits.

CHW reserves its rights to supplement this list of documents as discovery proceeds in this matter..
Because the foregoing documents contain sensitive business, proprietary, and/or personally
identifying information, CHW will produce them only after entry of an appropriate protective
order.  CHW does not waive any applicable privilege with respect to the foregoing documents, nor
does CHW concede the relevancy, authenticity or admissibility of any documents at this time or
that such documents are in CHW's possession, custody or control.

**III.    Computation of Damages**

Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), CHW hereby discloses "a computation of each
category of damages claimed" by CHW.

CHW does not presently claim any damages except attorneys' fees and costs if appropriate
and permitted by applicable rule or law.  CHW reserves the right to supplement this response

should it claim damages at a later date.

## IV.     Insurance Agreement

Fed. R. Civ. P. 26(a)(1)(A)(iv) requires CHW to provide "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."

At this time, CHW is unaware of the existence of any such insurance agreement. Investigation continues.

Dated: March 21, 2019                           Respectfully submitted,

By:____/s/ Anne L. Hershewe_____
        Anne L. Hershewe (SBN 26321)
        OGLETREE, DEAKINS, NASH, SMOAK AND
        STEWART, P.C.
        4520 Main Street, Suite 400
        Kansas City, MO 64111
        Telephone: 816-410-2243
        Facsimile: 816-471-1303
        anne.hershewe@ogletree.com

        A. Paul Heeringa (*Pro Hac Vice* to be Requested)
        MANATT, PHELPS & PHILLIPS, LLP
        151 North Franklin Street, Suite 2600
        Chicago, IL 60606
        Telephone: 312-529-6308
        Facsimile: 312-529 6315
        pheeringa@manatt.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 21st day of March, 2019, a true and correct copy of the foregoing

document was served via email, pursuant to the agreement of the parties, to counsel of record for

Plaintiff:

Mark D. Molner
MOLNER LAW GROUP, LLC
300 East 39th Street, Suite 2R
Kansas City, MO 64111
816-281-8549
Fax: 816-817-1473
Email: markdmolner@gmail.com

Michael S. Agruss (*pro hac vice*)
AGRUSS LAW FIRM, LLC
4809 N. Ravenswood Avenue, Suite 419
Chicago, IL 60640
312-224-4695
Fax: 312-253-4451
Email: michael@agrusslawfirm.com

James Parr  (*pro hac vice*)
AGRUSS LAW FIRM, LLC
4809 N. Ravenswood Avenue, Suite 419
Chicago, IL 60640
312-224-4695
Fax: 312-253-4451
Email: james@agrusslawfirm.com

By:___/s/ Anne L. Hershewe_____

37865943.1

6

## **CERTIFICATE OF SERVICE**

I certify that on April 18, 2019, a true and correct copy of the foregoing document

(Plaintiff's First Amended Complaint) was electronically filed with the Court's CM/ECF system

to be sent via the electronic notification system to all counsel of record.

MOLNER LAW GROUP, LLC

By: /s/ Mark D. Molner
　　　Mark D. Molner, SBN 24493
　　　300 E. 39th Street, Suite 1G
　　　Kansas City, MO 64111
　　　816-281-8549 – office
　　　816-817-1473 – facsimile
　　　mark@molnerlaw.com
　　　Attorney for Plaintiff